Good morning, your honors. May it please the court, Craig Anderson on behalf of Las Vegas Metropolitan Police Department officers Bohannon, Walford, and Letigar. This is an officer-involved shooting in a section 1983 excessive force lawsuit where the district court found that the initial shots fired by the officers were reasonable, but took issues with the second volley of shots that occurred two seconds later. In addition, the district court took issue with the use of a canine to ensure that the suspect was incapacitated before handcuffing a clerk. According to the district court and the plaintiffs, the second volley of shots was unnecessary and unreasonable because the suspect was clearly wounded and the officers had never positively identified a handgun. It is our position that the officer should have been granted qualified immunity on the second volley of shots on both prongs of the qualified immunity analysis. First, dealing with the merits issue, it is not unreasonable for an officer who accurately perceives a imminent deadly threat to use deadly force. And then once the suspect is struck and falls down, when the suspect still continues to move and is not clearly incapacitated and has not clearly surrendered to fire additional shots. But this depends on your view of the facts that the suspect had not surrendered and was still a threat, right? No, this is based upon the video evidence that after the initial volley was fired, the suspect continued to move, was at a minimum sitting up, which is demonstrated by the video. And there was no indication that he had surrendered. And there was no- How do you know what he was doing other than his legs from the video? At this point in the video, I only see his legs. The testimony then would come from the four officers, the two federal officers and the two Las Vegas Metropolitan Police Department officers, who all testified he was still moving and that his hands were not visible. And there was no evidence contradicting- I think Judge Friedland is trying to strike at the issue of whether or not there are disputed issues of fact here. I looked at the video also, and quite frankly, it doesn't square with what you're contending, maybe a jury would believe it, maybe not. But it seems to me that you have an issue here as to whether or not there are disputed issues of fact. And of course, you have the Marsh case. And I'm anxious to find out from you how you distinguish this case from the Marsh case. Okay. So the Marsh case dealt with the interlocutory appeal issue and whether there was jurisdiction. There was jurisdiction here because in the Marsh case, the video was so poor and there were contradicting statements that the officer had made that could give a jury pause to judge his credibility and whether there was anything supporting the officer's contention. In this case, we have a very long video. The entire encounter is three minutes long. All of the officer's statements are backed up by the video as to what is shown. There is no contradictory statements. If any of the officer's version of a- Why isn't just the number of shots in the first volley enough to create a question about whether he could have still been a threat? Because within two seconds, an officer would be unable to determine how many shots had hit him, where they had hit him, and to provide any type of medical analysis as to what his availability still would be to access what they believed to be a firearm. But Mr. Anderson, you say in your brief at page 38 that it cannot seriously be disputed that a musical officer would continue to perceive an immediate threat because even after being shot, Childress immediately attempted to stand back up. I think that's a disputed issue of fact from what I gleaned from this record here. Well, what is not disputed is that he is not lying prone on the ground and he is still moving. So the issue would be whether a reasonable officer could still perceive that to be resistance in an attempt to stand up. And I would direct you to the Plumoff case where the Supreme Court allowed additional shots and said that shooting is reasonable until the suspect is clearly incapacitated and has clearly given himself up. The word they used was clearly. But this is kind of back up with my apologies. I'm working on the assumption that you've abandoned the state law of claims. So we have jurisdiction, so to speak. We're not deterred by that. Is that correct? That is correct. Okay. And so I think that when you look at the facts of this case and compare them to the Wilkinson case from the Ninth Circuit and the Plumoff case, this two second gap in time is insufficient to find that an officer has time to adequately deliberate to determine the severity of the injuries. And the fact that the suspect was still moving falls into the Plumoff case that he was not clearly incapacitated and he was not clearly surrendering. You know, when I looked at the video, he seemed pretty incapacitated to me. Maybe a jury would agree with you. Police officers have to be testified. But I can't think of a better example of a disputed issue of fact here. That's the bottom of this qualified immunity case. And it seems to me that, you know, jurisdiction is questionable here under the Marsh rule. Well, I don't think the jurisdiction is questionable, especially when you look at Molyneux, Plumoff, Scott v. Harris, I understand the Johnson v. Jones standard, but the Supreme Court has had similar cases of this where they found that jurisdiction is easily accepted because we have the video, we have the officer's statements, we have all of the evidence necessary because the issue is really, if you believe there's an issue of fact as to whether somebody's judgment should be granted on the merits, we can then move into the certainly established prong, which is it clearly established that firing shots two seconds after an initial round, is it clearly established that  the suspect had a knife, he had a six second gap between the two volleys, and he was laying prone on the ground. He, he was clearly in your brief though, that it would be excessive for any officer to use deadly force on anyone who posed no threat. So I don't really think you get much more from arguing about the second prong. This really turns on the first prong, doesn't it? Not necessarily because he is still upright. I mean, on his buttocks, but he is still sitting up. He's not laying prone on the ground. But the jury, I mean, someone has to either find that he was a threat or he wasn't. If he was a threat, it's okay to shoot. And if he wasn't, it's not okay to shoot. And there's, that's clearly established. So I don't think the clearly established prong is really adding anything here. Okay. Well, the evidence in the record then on the merits from their own experts, is it that a person can draw and fire a firearm within two seconds. And so the fact that he is still not prone on the ground, that he is still not clearly incapacitated, clearly surrendering as the Supreme Court requires, a reasonable officer on the scene of the incident, because we're kind of, there was a recent case that you cited in the briefs Monzon, where the panel was clear that we shouldn't piecemeal these cases to a great extent, because you have to take into account, as you are very well aware, that we can't look at this with 20-20 hindsight. These are very stressful situations. They are very high tense with rapidly evolving, you know, all the language that I know. And so to punish an officer who has reasonably fired two seconds before to fire again, when the suspect continues to move, there is no case law that would indicate that is unreasonable. Now, I would agree with you. You know, what's pretty obvious that's happening here is that two seconds is, the reason the two seconds is, in a sense, in the favor of your officers, is that not that, if someone looked at the video, thought about it, had 10 seconds or a minute to think about it, would he, would this person be posing a threat justifying deadly force? And the answer is pretty clearly no. But the problem is your officers aren't processing this fast enough, or they've got their adrenaline high. I mean, it's a question of whether or not they have time to assess the true situation. And we see this over and over again. These guys are in a high stress situation. The adrenaline is flowing. They've shot once and they don't actually pause to think about it. And they just shoot again. I mean, we see this over and over again. But that doesn't tell me that you win. It tells me that the officer actually is supposed to think about it. I agree generally with what you said, Judge Fletcher, except that the officers are supposed to eliminate the threat. And as long as they can reasonably articulate a threat, which we have four officers here that did, they all testified that they still perceived a threat. Well, you know, I've seen these cases over and over again. The fact that we got four officers testifying consistently just tells me that I got four officers testifying consistently after the fact in order to defend themselves. We see that all the time, of course. But then what the court is asking officers to do is after the initial balling, when the suspect is still moving and it's clear he's not prone on the ground, he is still at least up on his buttocks, just wait and hope for the best where his own experts agree he can pull and fire a gun within two seconds. The Supreme Court, I would go back to Plumoff where it says he has to be clearly incapacitated and he has to be or clear signs of surrender. And we simply don't have that here. He is not incapacitated. He is still moving. He is still a viable threat. And the officers are not required to guess or speculate as to what his injuries are or what his ability to, to still remain active. Yeah. If we were to disagree with you on this point, and if we were to agree that it's a disputed question on the facts as to whether or not he still poses a threat, do we have, do we have appellate jurisdiction? Okay. Do you have appellate jurisdiction? Um, well, yes, I, I believe that you have appellate jurisdiction over this case. I think this is the exact. How do you get around, uh, among other things, Judge Friedland's opinion in the state of Anderson, if there's a disputed question of fact, I believe the facts in this case are much different than the state of Anderson. In the state of Anderson, there was not, it did not appear to me, which Judge Friedland would know better, that there was any good video evidence and that there were also contradictory statements that the officer made where he never mentioned that a gun was in play until later. I mean, that, that just might mean that it was a stronger case for the plaintiff, but the issue is whether there's a dispute of fact. And so you're saying that evidence for the plaintiff was better in that case, but in both cases, we have a dispute of fact, as Judge Fletcher's premise was assume there's a dispute of fact. And at that point, how do you have jurisdiction? Well, so the fact that, that we're saying here is disputed, in my opinion, is not disputed. Uh, the, the fact that I'm raising is that the suspect was still moving. He was not prone. And that is a fact from the video. Uh, I agree you can't see the hands. I agree that there is some ambiguity there as to what he's doing, but we have the officer's testimony and we have the video, which shows that he is still moving, that he is not clearly incapacitated. So I don't view that as a disputed fact. Cause the only fact that I believe I need to prevail is that he is still active, that he is still moving. Well, the district court disagreed with you. It said that whether Childress had his right hand near his pocket when approaching the officers was disputed and whether Childress was moving or had access to his pocket, you know, to being shot and falling to the ground. So the district court really believed there were disputed issues of fact here. But I know you disagree with that. Well, I don't disagree with that because I don't think anyone would know whether he had access to his pocket. I don't think that an officer would be able to tell that from that vantage point. What the officer's looking at is that he's still moving. He is not clearly incapacitated and the threat has not been eliminated. And I think from the video. Let me ask you, let me ask you, let me ask the question this way. Um, let's assume that we have a unanimous and consistent testimony from the four officers. That's not directly contradicted by the tape, but the jurors, for whatever set of reasons, decide that the four officers are lying. Um, is that a disputed question of fact? I think for purposes of summary judgment, no, because they did not provide any, if this court had evidence that the officers had credibility issues, veracity issues, their statements had been challenged in other ways than possibly, but for summary judgment, they need to come forth with some evidence that would support your theory, Judge Fletcher, at this point. I understand that as a technical matter, but in the real world, um, I wouldn't be surprised if a juror says, I see, you know, whenever, when, when four stories match precisely and it's after the fact, and the officers have a clear interest in having this story be the story that they're told, I wouldn't be surprised if a juror says, you know what? That's just, I, I don't, I don't believe it. Um, and I think the juror, if we're after the fact and we're trying to figure out if the verdict can be sustained, I, that jury verdict is probably sustainable. Yeah. I'm saying, so let me back up here because you have a minute and 10 seconds left and nobody's talked about that nice little doggy that came in with this person's leg, uh, and you're claiming nonetheless that, uh, your officers are qualified immunity for that. That's, that's the second branch of what we have to deal with. So the limited time you have, how can you justify that? Uh, I think officer Letigar's use of the canine, it's rather simple. Uh, the case law is that you can use a canine on a felon in these types of situations, unless they are handcuffed and under control. And here it was a less than lethal use of force to ensure that the officers were no longer at risk before approaching him and handcuffing. And the bite was less than 20 seconds. No, I looked at the video and he was dead by that time. He was moving, not at all. And there was plenty of time to assess the situation. And the dog went and attacked him. I mean, it just looked pretty, the optics were terrible, quite frankly. But in any event, I just wanted to give you the opportunity to comment. Thank you. And I'll say that no use of force optics are good. Whenever force is used, it's not going to be pretty, but it was a less than lethal use of force to ensure that the deadly threat was, was ended. And I'm, I apologize. I didn't reserve any time. Well, no, no, listen, we'll, we'll hear from the other side, but we will give you a chance to respond. Thank you, Your Honor. Yes. Uh, first of all, good morning to all of you. Welcome Judge Block. Um, I first, uh, want to agree with much of what's been said already by Your Honors. Uh, Judge Block is correct that there are clearly disputed issues of fact which support the denial of the summary judgment, but raise the issue of jurisdiction. Judge Freeland, I also agree with that there's a real jurisdictional issue here because the, uh, appellants are not taking the position of assuming the plaintiff's facts or all reasonable inferences and perceptions. Even a video, quite honestly, in some cases could be subject to more than one reasonable inference. But, um, this is a case that because of the disputes, at least all the reasonable inferences taken in plaintiff's favor, there really is a jurisdictional issue. I also clearly agree with Judge Fletcher that there's oftentimes in these cases, uh, real issues of credibility. Um, particularly when you have officers providing testimony to try to support, uh, the use of force. I will say that aside from what this court decides it's going to do on the jurisdictional issue, it's very clear on either the first prong or the second prong of a qualified immunity analysis that the use of shots in the second volley was clearly excessive and unreasonable, and there's many cases to support it. All of the cases that deal with the use of deadly force, quite frankly, support it. As this court is aware, there's cases such as Drummond and, uh, George where individuals have weapons in their hand that doesn't necessarily, uh, justify the use of force. But more specifically, because of the issue here of two volleys of shots and the plaintiffs, quite frankly, think there's real issues with the that's not subject to the discussion today. Um, we looked at some of the cases that address those issues, and I know your honors are aware of these cases, but Hopkins v. Andaya, a Ninth Circuit case from 1992, uh, dealt with two volleys of shots. And of course, Zeon, although Zeon came out in 2017, it very importantly said at the time of the 2013 incident, because the incident in Zeon happened in 2013, it was clearly established that a second volley of shots by an officer against a clearly injured suspect on the ground that posed no immediate threat of serious physical injury is unreasonable. And in response to Judge Freeland's- Is the evidence from which you draw the inference that he was incapacitated, just the first volley was enough shots that he must have been incapacitated? Is that the inference? Judge Freeland, it's a combination of things. First of all, I think it's important to note, and this goes in part to what Judge Fletcher said, that these officers, uh, testified that they were aware their first volley had struck him. I think that's an important fact. Secondly, there was a two second pause. One of the officers estimated five seconds, but I think the video more shows two seconds. And importantly, the officers themselves testified they had a time to assess and decide whether to shoot a second volley. But in addition to the shots and in addition to them, uh, believing that they struck him, just looking at him on the ground after he was shot, the fact that he might've been moving or writhing in pain after being shot multiple times does not rise. It doesn't have to be any potential threat. It has to be an immediate threat of death or serious bodily injury. But additionally, Judge Freeland, I think it's important, uh, to note they saw no object in his hand. They saw no object on the ground. They saw no reaching movement for a weapon or towards his pocket or towards his waistband. And if you assume plaintiff's facts and take all reasonable inferences, he was, uh, seriously and fatally injured, incapacitated, making no threatening movement at all with both hands. Visible with no weapon in his hands, on his persons or anywhere. And if you listen, let me, let me pick something up. You just said, are you saying that he was fatally wounded from the first volley? It's unclear, Judge Fletcher. We believe that the fatal shots quite frankly happened in the second volley. Okay. But what I mean, I thought that's what your position was. Yes, but what I thought, I just heard you say that he looked as though he was fatally, I thought I heard you say he was fatally wounded on the first volley. Okay. Well, what I'm trying to say, and I probably didn't say it very well, Judge Fletcher, is they had the impression that they struck him center mass in the first volley and believe that he could be fatally wounded from those shots. It turned out from the autopsy findings later, the fatal shots were in the second volley, uh, but be that as it may, uh, he was clearly incapacitated, even the language of Plumhoff, which they want to rely on. Um, and Plumhoff said, I'm looking for my notes. I apologize. This would be a different case if the officers had initiated a second round of shots after the initial, uh, after the initial rounds, if the suspect was clearly incapacitated, that is this case. And if you take all reasonable inferences in plaintiff's favor, this is one of those cases where plaintiffs could have considered filing a motion for summary judgment on the second group of shots. But at a minimum, uh, this court should decide either that it lacks jurisdiction because of the factual disputes or make the easy decision that the district court was correct in denying summary judgment on the second volley of shots. I'd like to add something about this two second pause. Uh, in Zeon, and the last case I wanted to mention was Tan Lam v. City of Los Banos. Again, that came out in 2020, but it was a 2013 incident. And importantly, Tan Lam referenced both Hopkins and Zeon as being either controlling or persuasive authority and standing for the proposition that just because the opinion comes out after a particular incident, if it references controlling authority earlier, 2013, that governs, and our incident happened 1231, 2015, um, but if the, I don't know what the confusion is on Zeon regarding the timing, there is a reference in the opinion that spans six seconds. I don't know if they were trying to say how much time passed from the first shot to the last shot, but one of the exhibits in Zeon was the YouTube video of the shooting. I watched it yesterday. I think it's in the record here or reference. And I, in one of our footnotes, it's a one second gap in Zeon between the first group of shots and the second group of shots. If you watch the video less than what we have here. The other thing you'll notice when you watch the video in our case, and I know you have repeatedly, when you listen to the shots while he was on the ground, there's really a last shot. There's almost a pause, almost two volleys, if you will, of the shots while he's on the ground. The last one might've been the last and fatal shot, but you hear some shots while he's on the ground, a short pause, and then the last shot, and then he stops moving. And as Judge Block indicated, he's not moving at all. He's laying there motionless, lifeless, and they sick the dog on him. I would suggest that in addition to all the case law that supports the plaintiff's position, the shots while he's on the ground and the dog bite, they really fall within the obvious here. I mean, to have someone visibly unarmed, not moving, shot multiple times, laying on the ground, and it must be difficult. I know family members are watching this today, but it must be difficult to know in the last seconds of someone's life, a dog is chewing on their leg for 15 seconds. And two of the cases that support that, because they argue qualified immunity on that, were Mendoza versus Block, the Ninth Circuit case from 1994, and Watkins versus the City of Oakland, which I'm sure Judge Fletcher will remember, a good opinion written by a good judge. But I think there's not only case law that supported both prongs of the analysis that the dog bite was accessible and reasonable. The law was clearly established on that point. So I think for all those reasons, this court should either decide that it does not have jurisdiction because of the clear material factual disputes, or if it gets beyond that, assuming all of plaintiff's facts and taking all reasonable inferences in favor of the plaintiff, which the appellant seemed unable or hesitant to want to do, there's clearly evidence to support excessive force on the second group of shots and the dog bite. And as you've all pointed out, most of these issues and questions are jury questions. There are jury questions of fact, there are jury questions of weighing this evidence, and even reasonable inferences. And even if the appellants say, well, one reasonable inference is X, that might be true. But there's another reasonable inference that a jury could say, and that might be why. And that's why we can't grant their appeal here. And as Judge Fletcher indicated, there's always questions of credibility. So those are my main points I wanted to make, but I have a little time. So if any of you had any follow up questions on any of the points. Any questions from the bench, any further questions? No, thank you. Mr. Anderson, let's put two minutes on the clock for you. Thank you, Your Honor, and to follow up on what Mr. Glippo finished with, the reasonable inferences, we can all have different opinions as to what was going on here. The standard is what a reasonable officer on the scene in this tense situation would thought, not what we can come up with or other people. I would direct the court back to the Wilkinson case, which was a two second gap between first and second volume. The fact it's two seconds is found in the dissent of page 577. But the majority in that case said that you don't need to parse out each shot because such a requirement places additional risk on the officer, not required by the Constitution. Torres did not shoot mindlessly, but responded to the situation by ceasing fire after he perceived that the van had lost power and that the threat had been eliminated. That's what happened here. The officers continued to shoot until he went prone on the ground. It wasn't mindless and it would be placing a heavy risk on officers to have to render immediate medical diagnosis, determine how incapacitated the person is after they have justifiably used deadly force against someone who is not clearly incapacitated. And I would argue that the clearly established prong does apply because there needs to be a case that says two seconds is sufficient time to deliberate and reach all of these opinions that we're requiring of the officers. And if there's no further questions, then I'll rest on that. OK, thank thank both sides for their arguments. Lawrence versus Bohannon submitted for decisions. Thank you for their helpful, helpful arguments. The next case on the calendar this morning, Montana Green Party versus Stapleton.
judges: W. Fletcher, Friedland, Block